## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 12 CR 927 |
| ) | |
| LASHAWN FORD ) | Judge Rebecca R. Pallmeyer |
| ) | |

## MEMORANDUM ORDER

Defendant LaShawn Ford has been charged in a seventeen-count indictment with defrauding ShoreBank, a federally-insured financial institution. Ford moves to dismiss several of the counts against him as multiplicitous. For the reasons explained here, the motion [21] is denied.

## BACKGROUND

Count I of the indictment charges Ford with a scheme to defraud ShoreBank in violation of 18 U.S.C. § 1344. Specifically, the indictment alleges that Ford took several loans from ShoreBank, including a line of credit that he agreed to use "solely for purposes of purchasing and rehabilitating investment properties." (Indictment [1] ¶ 1(d).) In order to obtain a $500,000 increase in the line of credit and a twenty-four month extension of its maturity, the indictment alleges, Ford made false statements about his income and about the purposes for which he intended to use the additional credit. (*Id.* ¶ 4.) The indictment identifies a number of incidents, on separate dates, in which Ford allegedly made requests for specific advances from the line of credit, representing that he intended to use the funds to rehabilitate certain properties, when, in fact, he intended to use them for other purposes. (*Id.* ¶5.) Later, Ford allegedly did use the funds for purposes unrelated to the properties referred to in the advance requests. (*Id.* ¶6.) In Counts II and III, the indictment alleges that Ford made false statements to obtain the credit increase—specifically, presenting tax records for himself and his real estate firm that contained inflated income statements. The remaining counts of the indictment identify individual advances on the credit increase, charging that each episode constituted an execution or attempted execution of the fraud scheme charged in Count I in violation

of 18 U.S.C. § 1344 (Counts IV, VI, VIII, X, XII, XIV, and XVI), as well as a false statement to a financial institution in violation of 18 U.S.C. § 1014 (Counts V, VII, IX, XI, XIII, XV, and XVII).

## DISCUSSION

Ford has moved to dismiss each of the execution or attempted execution counts (IV, VI, VIII, X, XII, XIV, and XVI) as multiplicative of the scheme alleged in Count I. At a hearing on this motion, the court expressed concern that the statements used to support the execution counts appeared to be duplicative of the allegations that supported the false statement counts, as well. After examining the law on these issues, however, the court ultimately concludes that the arguments regarding multiplicity lack merit.

Multiplicity is the charging of a single offense in separate counts of an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995) (citing *United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir.1991)). In assessing whether an indictment contains multiplicitous counts, the court must "look to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum amount of activity for which criminal liability attaches." *Id.* at 912 (citing *United States v. Song*, 934 F.2d 105, 108 (7th Cir.1991)). The Seventh Circuit holds that although an "act in furtherance of" a scheme to defraud a financial institution may not be the subject of a separate count, each "execution" of a scheme does constitute a separate violation of § 1344. *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994) (collecting cases). "Thus, for each count of conviction, there must be an execution." *United States v. Hammen*, 977 F.2d 379, 383 (7th Cir. 1992). And, as the *Hammen* court explained, "actions that tend to prove the existence of the scheme will often be the actions actually taken to execute the scheme." *Id.*

Ford argues that the individual bank fraud counts must be dismissed because those acts were "in furtherance of the overall scheme to obtain the funds," not separate acts executing the fraud. (Def.'s Mot. to Dismiss [21] ¶ 15.) The government urges, in response, that the individual advances on the $500,000 line of credit are indeed separate executions of the scheme: they

2

occurred on separate dates, involved different false statements, and resulted in specific, separate individual advances of the bank's assets. They are, thus, "chronologically and substantively distinct from the extension on the line of credit in May 2006." (Gov't's Resp. [28] at 5.)

In *United States v. Longfellow*, the Seventh Circuit considered whether a particular act constituted an execution of a scheme to defraud or merely an act in furtherance of a scheme on which the statute of limitations had run. 43 F.3d 318 (7th Cir. 1994). "Determining exactly what constitutes an 'execution' of a scheme is difficult," the court observed. *Id*. at 323. The bank fraud statute is to be "'construed broadly,'" however, and "'actions that tend to prove the existence of the scheme will often be the actions actually taken to execute the scheme.'" *Id.* (quoting *Hammen*, 977 F.2d at 383). The *Longfellow* court characterized the Ninth Circuit's opinion in *United States v. Molinaro,* 11 F.3d 853 (9th Cir. 1993), as having furnished "one of the few, if not the only," clear explanation that actions constitute "separate executions" when each such action is "'chronologically and substantively independent[,] none depended on the others for its existence, [and] each had its own functions and purpose—they were interrelated only because they involved the same overall scheme.'" *Longfellow,* 43 F.3d at 323 (quoting *Molinaro*, 11 F.3d at 860). The *Molinaro* court pointed out that "two transactions may have a common purpose but constitute separate executions of a scheme where each involves a new and independent obligation to be truthful." *Molinaro*, 11 F.3d at 861 n.16. In *Longfellow,* the defendant, who was the president of a credit union, issued a series of loans to enable individuals to purchase land that Longfellow owned. All of the loans were made more than five years before Longfellow was indicted, and the prosecution would have been barred by the statute of limitations, except that defendant had refinanced one of the loans during the five-year limitations period. That refinancing constituted an execution of the scheme to defraud, the court concluded, because it generated a new risk for the credit union. By contrast, in *United States v. Anderson,* 188 F.3d 886 (7th Cir. 1999), the defendant borrowed money from a bank for the purchase of zero coupon bonds more than ten years before she was indicted. The fraud was

completed when she received the funds for that purchase, the court determined, and her later transfer of those funds from one brokerage to another did not put the victim bank at any greater risk. Her conviction was reversed as time-barred based on the ten-year statute of limitations for bank fraud.

Whether multiple acts constitute separate executions of a scheme is a "fact intensive" inquiry. *Id.* at 889. This court concludes that multiple acts alleged in Ford's indictment constitute separate executions of his scheme because they are "chronologically and substantively independent" of one another. *Longfellow*, 43 F.3d at 323. And because each draw against the line of credit imposed independent risk on the bank, charging those acts as executions of the overall scheme to defraud is not multiplicitous. *See Allender,* 62 F.3d at 913 ("each time an identifiable sum of money is obtained by a specific fraudulent transaction, there is likely to be a separate execution of the scheme to defraud") (citing *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994)).

*United States v. Lemons*, 941 F.2d 309 (5th Cir. 1991), on which Ford relies, is distinguishable. In that case, the defendant, president of a savings and loan institution, arranged for the institution to make a large loan to the buyer of real estate. Lemons then arranged to receive a portion of an "assignment fee" paid to a broker who had helped negotiate the loan. To prevent the discovery of his receipt of these funds, the defendant arranged to receive the money from the broker himself in a series of transactions over a six-month period. The goal of that scheme, the court concluded, was for the defendant to receive an assignment fee; though the fee was divided up and distributed in separate transactions, all were part of "one performance, one completion, one execution of [a] scheme." *Id.* at 318.

Unlike the defendant in *Lemons*, Ford allegedly received funds directly from the bank, on multiple occasions, ostensibly for the purpose of rehabilitating a number of separate properties. Though Ford negotiated an overall line of credit, it was limited to use in the purchase and

rehabilitation of property. Each disbursement of funds was related to a specific separate transaction, associated with a different property, and supported by independent false representations about what Ford intended to do with the money. Each of the false representations "created a new and independent risk" for the bank. *Allender*, 62 F.3d 909 at 913. Thus, each such incident was "chronologically and substantively independent and not dependent on another for its existence." *Id.* at 912; *Longfellow*, 43 F.3d at 323; *see also United States v. Harris,* 79 F.3d 223, 232 (2nd Cir. 1996) (holding six separate extensions of a loan were "chronologically and substantively independent from the initial loan agreement" because, in agreeing to extend the credit, the banks relied on false monthly financial statements and borrowing base reports); *United States v. George*, 986 F.2d 1176, 1179-80 (8th Cir. 1993) (fraudulent invoices, altered on separate dates, that enabled defendant to draw on a line of credit constituted separate executions); *United States v. Burger*, 964 F.2d 1065, 1074 (10th Cir. 1992) (no double jeopardy where "each count of the indictment involving a draw upon a line of credit would constitute a separate execution of the scheme and would be punishable as a separate crime").

The remaining concern requires briefer analysis. Indeed, Ford himself has not challenged the false statement counts as multiplicitous of the fraud counts, and as the government points out, they require proof of different elements. Under the well-recognized "*Blockburger* test," "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). That test is met here: to establish a violation of 18 U.S.C. § 1014, the government must prove (1) that the defendant made a false statement to a financial institution; (2) that he knew the statement was false when made; (3) that he made the statement with the intent to influence the action of the financial institution; and (4) that the institution's deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Violation of 18 U.S.C. § 1344 requires (1) proof of a scheme to

defraud a financial institution or obtain its funds by means of false statements or promises; (2) that the defendant knowingly executed the scheme; (3) that the defendant acted with intent to defraud; (4) that the scheme involved a materially false representation or promise; and (5) that the institution's deposits were insured by the FDIC.  Because § 1014 contains an element not contained in § 1344 (*i.e.*, proof that a false statement be made to obtain a loan or advance) and § 1344 encompasses elements not required by § 1014 (i.e., a "scheme or artifice to defraud" and materiality), there is no multiplicity concern.  In short, the government may charge both false statements and bank fraud arising from the same transactions.  So the Seventh Circuit has directly recognized.  *See United States. v. Abu-Shawish*, 175 Fed. Appx. 41, 43-44 (7th Cir. 2006).

## **CONCLUSION**

Defendant's motion to dismiss certain counts of the indictment [21] is denied.

ENTER:

Dated:	October 31, 2013	_____
	REBECCA R. PALLMEYER
	United States District Judge